## No. 7821.

### SOUTHERN MUTUAL INS. CO. VS. W. S. PIKE.

Because the right of a plaintiff to demand a statement of account from a defendant is not prescribed, it does not follow that the debt is not prescribed which is evidenced by the account.

The debt, incurred by the president and cashier of a corporation on account of money of the corporation held by him, and notes and premiums due the corporation not collected by him, is prescribed by ten years from the time he ceased to exercise any of the functions of his offices. The obligations of such an officer to return the books or any other specific property of the corporation shown to be in his possession is *not* prescribed in ten years.

APPEAL from the Fifth Judicial District Court, parish of East Baton Rouge. *McVea*, J.

---

A. L. Gusman, Barrow & Pope, and Merrick, Race & Foster for plaintiff and appellant :

First—The entries made on the books of the corporation, by the deceased himself, and either as president or as treasurer, or by any one under his direction, constitute, as against his succession and legal representatives, a standing acknowledgment of his liabilities in his two recited capacities, and hence, prescription cannot be pleaded. 30 A. 1077.

Second—When in order to plead prescription the defendant in his plea sets forth the facts that terminated the fiduciary capacity, and pleads prescription to the liability, the judgment overruling this plea must form *res adjudicata* on the question of liability, unless some new facts are set up. Although the demand in one case was for an account, and in the other case was the debt shown to be due by that account, yet it is evident that the question considered by the court on each occasion as that conclusive of Pike's liability was, when did he cease to be president and treasurer of the company ?

The court now says it was in 1864, which, if true, should have defeated

the demand for the account. In the previous decision, it said he held the offices until his death, on 7th February, 1875.

The question and the evidence was the same on both occasions, and the first judgment must form res adjudicata. 29 A. 772 ; 31 A. 212, 339.

Third—The president and cashier of a bank is liable as a depositary for all the specific property of the bank entrusted to his keeping, and such liability cannot be prescribed. C. C. 2926, 2938, 2940, 2941, 2955, 3510, 3511, 3512 ; DeLaporte, Traité de Prescription, pp. 67 and 68 ; 11 A. 411 ; 13 A. 20 ; 67 N. Y. 598 ; C. C. 432, 3440, 3513 ; Morse on Banking, 90 ; 16 A. 16 ; 10 Johns, 285 ; 6 Hill, 298 ; Angell on Limitations, p. 178, ed. of 1846 ; 4 Blackford, (Ind.) 324 ; 22 Barb. 314 ; 8 W. Va. 95 ; 114 Mass. 400 ; 5 Cranch ; C. C. 560 ; 16 A. 167 ; C. C. 3489 ; 15 A. 145.

Fourth—The president and cashier remains as such until his office ends. by his resignation or removal, or by its expiration. That in this case there was no resignation express or implied. C. C. 3031 ; 41 N. J. Law, (2 Vrooni) 107. There was no removal. There was no expiration of office.

Though the officers of a corporation are required, by its charter or by its by-laws, to be elected yearly, yet they may continue in office until their successors are duly chosen. Conn. Sup. Court 1827, McCall vs. Bryan Manuf. Com. 6 Conn. 428. The clerk of a corporation, unless the laws of a State or by-laws of the corporation provide otherwise, remains in office until another is chosen. Me. Supreme Court 1849, South Bay Meadow Dan Co. vs. Grey, 30 Me. 547.

Richardson & Magruder, and Herron, Byrd & Beale for defendant and appellant :

The most that can be said against the defendant is, that he received the money charged upon the books of the company as agent, and the only knowledge we get of the amount received was from the books. Plaintiff claims that he must be presumed to have held the money received from the date of its receipt until his death. If this was the presumption whenever an agent received money, this court never would have held that an agent could plead the prescription of ten years in the cases of Wagoner vs. Phillips, 22 An. 151 ; Millaudon vs. Lesseps, 17 An. 250 ; Garland vs. Scott, 14 An. 144 ; Imboden vs. Richardson, 15 An. 534 ; Hereford vs. Leverich, 16 An. 397.

The prescription commenced when the defendant ceased to act as an officer of the bank, and matured ten years thereafter. 7 A. 515.

The opinion of the court was delivered by

MANNING, C. J. This action is for an account, with a prayer for

judgment against the defendant for one tenth (his virile portion) of whatever may be shewn to be due the plaintiff in cash, and for the delivery of its books, notes, etc. The pleadings and facts are fully set forth in our opinion, rendered when the case was last before us. The plea of prescription was then overruled, and the cause was remanded with the order that within sixty days, from notice of the judgment the defendant shall render an account of the administration of his father as president and treasurer of the plaintiff company, from February 1, 1862, and in default of compliance that the plaintiff be allowed to prosecute its suit to final judgment.

The defendant obeyed the order by transcribing from the books the entries made therein from the date mentioned above to December 6, 1864, "when his father ceased performing any functions as president or treasurer of the company," declaring that he has no knowledge of the company's affairs, and in rendering the account has been merely a copyist. He then pleads the prescription of ten years to "the entire claim, and to each and every item thereof, and to every item of the account." This plea was sustained.

It is objected to this plea that our decree on the case, as it was before us then, is a bar thereto, and forms the thing adjudged *quoad* this plea. This is a misconception.

The plea of prescription first made was to the action for an account. Its substance and meaning was that, by inaction during ten years, the plaintiff had lost the power, or right, or faculty of calling on the defendant for an account of any kind. We overruled the plea, thereby adjudging that the power and right to demand an account still existed, and in furtherance of its exercise ordered that one be rendered. The order has been obeyed. Now the plea of prescription is made to the indebtedness evidenced by the account—to each item thereof that was put on the books ten years before the institution of this suit. It may well be that one shall be compellable to furnish or render an account of past transactions with another, and yet sufficient time may have elapsed to give him immunity from liability because of them.

This company was located at Baton Rouge. The last meeting of its directors was held there February 1, 1862. The statement made then by the elder Pike as its president and treasurer is the basis of this suit. He left that place permanently in 1863 or early in 1864, and was engaged in the business of banking in this city continuously from that time until his death in January 1876. During his life no suit was instituted against him. The latest entry in the books was in 1864. This suit was instituted in 1877.

The prescription pleaded by the defendant, as one of the heirs of his father, cannot be successfully opposed to the demand for any specific

objects such as the books, papers, seal, etc., and it is conceded that it does not. But the cash or money in hand in 1864, and the liability for non-collection of the notes and premiums on policies, is on a different footing. By the conversion of the former, and by the failure to collect the latter, a debt was created and the prescription *liberandi causa* is applicable thereto.

It cannot be seriously contended that Pike received the money as a special deposit. It was not expected that he should return it in kind, or distribute the identical money among those who might be entitled to it. From the moment when the business of the company stopped—when he ceased to conduct it in any of the capacities he had assumed, the liability for the money became a personal obligation which was enforceable against him. This is equally true of the notes. If it was his duty to collect them, and he failed to perform it, whereby they were lost to the company, his liability attached, and his creditors must enforce it in time at their peril.

The difficulty in the case, and the difference between the counsel, lies not so much in the principles of law applicable to the case, as in the effect which certain facts have on the application of those principles. Thus it is, for the plaintiff contended that the elder Pike was actually president and treasurer of the company up to the day of his death— that the company was in existence, and he was the continuing mandatary of the stockholders, and hence that prescription could not run while he held this relation to them. The defendant on the other hand points to the indisputable fact that Pike never undertook or transacted any business in insurance after February 1862—that shortly thereafter he removed to this place, closing the office of the company, and that the last entry in the books is in 1864. His attitude to the company and to the stockholders was not that of an acting officer of a living organization. Even if his declarations were admissible in evidence, they did not imply, much less avow, that he was continuing the discharge of any official function. On the contrary their purport was that if he had incurred liability to any one for official acts in the past, he would discharge it. He treated the company as defunct, and so did all those who were interested in it.

We hold that the elder Pike's liability attached in 1864—that his son and heir cannot prescribe the demand for specific property, but he can oppose the prescription *liberandi causa* to the claim for money and to that of indebtedness for failure to collect the notes and the premiums on policies, which it is alleged he should have collected. He lived twelve years after the business of the company had ceased. No judicial demand was made during that time for the recovery of the debt created

by his alleged laches, and his heir is protected from that demand by the lapse of time.

Judgment affirmed.

WHITE, J., concurs in the decree.

---

### DISSENTING OPINION.

DeBLANC, J.   William S. Pike was, until his death, the President and Treasurer of the Southern Mutual Insurance Company.   From his appointment in those capacities, whatever he received—money in payment of notes, or notes as evidences of loans—he held for, as the custodian of the company, and on deposit.   He never evinced an intention of changing the character of his possession, never denied the rights of the stockholders ; but—on the contrary—left them under the impression that he would account.

It was only in 1874, that a remark made by him, should have warned those who heard it, that he had become an ordinary debtor of funds which he had ceased to hold as treasurer, and that remark was "that he could and would settle with every one connected with the company, but that he could not do it at that time, for the reason that he could not then withdraw so much money from his business."   From that date—not before—prescription, if not otherwise suspended or interrupted—commenced to run in his favor.

For this reason, I respectfully dissent from the opinion and decree of the court.

---

### ON APPLICATION FOR REHEARING.

MANNING, C. J.   The counsel for the plaintiff complain that by affirming the judgment of the lower court we sustain the plea of prescription which was opposed to the demand for the notes and other specific property.   Such was not our intention.   We said explicitly that that plea could not be successfully opposed to the demand for any specific objects, and lest our decree may be misinterpreted we now specially reserve the right of the plaintiff company to demand, sue for, and obtain possession of all the specific property, or property in kind, belonging to it and in the possession of the defendant, and in that sense we adhere to our original judgment, and refuse the rehearing.